IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-229-FL

| | |
|---|---|
| JONATHAN W. SUPLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FKAACS, Incorporated f/k/a Absolute ) | ORDER |
| Collections Service, Incorporated; and ) | |
| JOHN AND JANE DOES NUMBERS ) | |
| 1 THROUGH 25[1], ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on plaintiff's motion for attorney fees and costs (DE 50). The court must determine a reasonable fee for plaintiff's Fair Debt Collection Practices Act class action complaint which resulted in success only for the individual named plaintiff. The matter has been fully briefed and issues raised are ripe for decision. For the reasons that follow, plaintiff's motion will be granted in part and denied in part.

**BACKGROUND**

Plaintiff filed this case as a putative class action on May 9, 2011, alleging that defendant, at the time denominated Absolute Collection Services, Incorporated, sent telephonic messages to

---

[1] Defendants John and Jane Does have not been named or served. Over one hundred and twenty (120) days have passed since the filing of this lawsuit. Pursuant to Federal Rule of Civil Procedure 4(m) the court must therefore dismiss the action without prejudice as to these defendants unless plaintiff can demonstrate good cause to the court why such service was not made within the prescribed time period. Accordingly, the court directs plaintiff to show good cause, within fourteen (14) days of receipt of this order, why service was not made during the one hundred and twenty (120) days following the filing of the complaint. Failure to demonstrate good cause or to respond to the notice within the time allotted will result in dismissal of defendants John and Jane Doe without prejudice.

himself and to members of the putative class which violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). Plaintiff alleged a single claim for relief under the FDCPA. Defendant denied all violations of the FDCPA in its answer.

After nearly a year of discovery, plaintiff filed a consent motion to certify class and grant preliminary approval of class action settlement and injunctive relief, pursuant to Federal Rule of Civil Procedure 23(b)(2) (DE 23). In conjunction with the motion, plaintiff also filed the parties' proposed class settlement agreement (DE 23-2).

The court held preliminary review hearing on October 11, 2012, to address the appropriateness of the proposed class, and the fairness of the proposed settlement. By oral order pronounced at said hearing, the court denied the motion to certify class and for preliminary approval of class settlement. In memorandum opinion subsequently entered (DE 38) the court noted its findings leading to a determination that class certification was inappropriate, namely that: (1) under the circumstances presented it was administratively impossible to determine whether a particular individual was a member of the class; (2) the primary injunctive remedy in the proposed class settlement was not meaningful given defendant's cessation of the business of collecting past-due accounts, and any monetary benefit to proposed class members was attenuated and insignificant; and (3) the proposed class action, based on the facts alleged by plaintiff, most reflected plaintiff's interests rather than those of any class that may exist, where the proposed class was limited to individuals who received allegedly illegal messages during the dates wherein plaintiff received the same.

On July 8, 2013, plaintiff filed notice of his acceptance of defendant's offer of judgment, made pursuant to Federal Rule of Civil Procedure 68. Judgment was accordingly entered the next

2

Case 5:11-cv-00229-FL   Document 55   Filed 12/19/13   Page 2 of 12

day against defendant in the amount of One Thousand and One Dollars and No/100 ($1,001.00) in full and final settlement of all of plaintiff's claims for relief. The judgment did not, however, preclude plaintiff from seeking attorney fees and costs.

After entry of judgment, the parties filed a joint motion for extension of time to file application for attorney fees (DE 43). The parties informed of a dispute between them as to the amount of legally recoverable fees and costs and requested additional time to explore resolution of the issue. The court granted the motion by order entered July 23, 2013. The court subsequently granted two additional motions requesting extensions of time to file (DE 45, 47).

On September 23, 2013, plaintiff filed the instant motion seeking Forty-Two Thousand Seven Hundred and Three Dollars and 75/100 ($42,703,75) in fees and Eight Hundred and Seventy-Seven Dollars and 55/100 ($877.55) in costs. Plaintiff does not seek fees for local counsel Peter Shedor, but only for counsel William F. Horn and his law clerk, Andrew Thomasson. Defendant responded in opposition, urging that plaintiff's requested award was too high for various reasons and requesting that the court award plaintiff no more than Five Thousand Dollars and No/100 ($5,000.00) in fees but not contesting the amount of costs sought. Plaintiff timely filed a reply in support of his motion.

## DISCUSSION

A.   Standard of Review

A successful plaintiff in an FDCPA action is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The "fee award under § 1692k is mandatory in all but the most unusual circumstances." Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995). Although the award of fees generally is mandatory,

calculation of what is a reasonable fee award is committed to the sound discretion of court. Id. at 628-29.

B.  Analysis

In a very recent decision, the Fourth Circuit had opportunity to discuss the proper calculation of an attorney fee award. See McAfee v. Boczar --- F.3d ----, 2013 WL 6501329 (4th Cir. 2013). Therein, the Court of Appeals instructed that the

> proper calculation of an attorney's fee award involves a three step process. First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F2.d 714, 717-19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

Id. at *4. The court will thus proceed accordingly.

  1.  The Proper Lodestar Figure

The first step in determining an appropriate attorney fee award is to determine the lodestar figure – that is, an amount of fees calculated by multiplying the amount of hours reasonably expended by plaintiff's attorney by a reasonable hourly rate. Perdue v. Kenny A. *ex rel.* Winn, 559 U.S. 542, 546 (2010). This figure is to be determined with reference to the Johnson factors. McAfee, 2013 WL 6501329 at *4. The Fourth Circuit characterizes the twelve factors set forth in Johnson as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the

suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). The court need not, however, list each Johnson factor or comment on those which do not apply. See Bergstrom v. Dalkon Shield Claimaints Trust (In re A.H. Robins Co.), 86 F.3d 364, 376 (4th Cir. 1996) ("The district court is under no obligation to go through the inquiry of those factors that do not fit.").

Plaintiff's request for attorney fees is based on an hourly rate of Three Hundred and Fifty Dollars and No/100 ($350.00) per hour for Horn, and Seventy-Five Dollars and No/100 ($75.00) per hour for Thomasson, with 204.65 hours of firm time expended total.

As an initial matter, plaintiff's counsel's billing entries contain mathematical errors. The billing records filed reflect 108 hours billed by Horn and 96.65 hours billed by Thomasson. At their respective requested rates, this amounts to Thirty Seven Thousand Eight Hundred Dollars and No/100 ($37,800.00) for Horn and Seven Thousand Two Hundred and Forty-Eight Dollars and 75/100 ($7,248.75) for Thomasson – a total of Forty Five Thousand Forty-Eight Dollars and 75/100 ($45,048.75). The court will therefore proceed using this number as the requested award rather than the erroneous figure requested by plaintiff.

      a.      Amount of Hours Reasonably Expended

In determining the amount of hours reasonably expended, the court first makes reference to the first Johnson factor: time and labor expended. The court must exclude hours which are "excessive, redundant, or otherwise unnecessary" such as when billing was not exercised with good judgment. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). In this case, Horn spent 13.6 hours on a motion for summary judgment which was never filed. This motion was drafted while the parties were engaged in settlement negotiations and had cancelled depositions and other activities to

5

facilitate these negotiations. These negotiations ultimately resulted in an offer of judgment that was accepted. Plaintiff conclusorily insists that the unfiled motion for summary judgment facilitated these negotiations, but does not explain how. "The party seeking attorneys' fees has the burden of proving that the . . . hours worked are reasonable." E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs, 724 F.3d 561, 569 (4th Cir. 2013) (citations omitted). Because plaintiff has not demonstrated that reasonable counsel would have expended time on a motion for summary judgment with the case in the posture it was in, the court will exclude the 13.6 hours spent on the motion, reducing Horn's time to 94.4 hours.[2]

Defendant urges that plaintiff's requested hours should be further reduced to eliminate what defendant urges is non-compensable clerical work, citing Wilson v. Barnhart, 1:06-CV-62, 2006 WL 3455071, at *1 (W.D.Va. Nov. 30, 2006) ("[P]urely clerical tasks are ordinarily a part of a law office's overhead and should not be compensated for at all"), and Johnson v. Weinstein & Riley, P.S., 2011 WL 1261578, at *5 n.4 (E.D.N.C. Mar. 30, 2011) (discussing file review as clerical work). Defendant contends that the billing records that plaintiff submitted contain several entries describing review of files which are thus non-compensable. Defendant does not point to specific time entries, but the court notes two entries describing review of the litigation file. One was in the context of drafting notices of deposition, the other in reviewing discovery objections. This does not appear to be clerical work, but rather work done by attorneys for research purposes in advancing plaintiff's case. The court therefore declines to eliminate or discount these hours.

Defendant also points to four entries, out of over one thousand (1000), that are "block-

---

[2] Horn has filed an affidavit in which he states that defendant's counsel promised not to object to his requesting attorney fees for hours spent on the motion for summary judgment. While this would represent lamentable dishonesty on the part of defense counsel if true, these hours would still not be properly compensable under existing law.

6

billed." That is to say, where multiple tasks are put together in the same billing entry. "Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Block-billing, however, does not necessarily require denial or reduction of fees. See, e.g., Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (stating district court has discretion to reduce block-billed hours because they may overstate the hours incurred and make it "difficult to determine how much time was spent on particular activities"); Farfaras v. Citizens Bank & Trust of Chicago, 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice."); Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). The relevant question is whether the documentation of hours is adequate. Hensley, 461 U.S. at 433.

In this case, the four block-billed entries noted by defendant are as follows:

| 2/2/2012 | William F. Horn | Review litigation file, research and Defendant's disclosures, drafted Notices of Deposition directed to Iradi, Malmfelt, ACS and Cass, drafted letter to Maldonado enclosing same and requesting mediation dates, updated file status report and notes. | 1.6 | 350 | $560 |
|---|---|---|---|---|---|
| 3/28/2012 | Andrew Thomasson | Conducted comprehensive research of all federal and state dockets to identify case cited by Defendat [sic] as having settled on class basis, drafted memo to WFH on findings and notes to file | 3.8 | 75 | $285 |

| 10/4/2012 | Andrew Thomasson | Receipt and review of WFH memo- performed public records and legal research to identify past and present litigation involvcing [sic] ACS and cases brought by government regulators against debt collectors for claims similar to Plaintiff's – preserved copies of relevant documents and drafted memo to WFH | 5.2 | 75 | $390 |
|---|---|---|---|---|---|
| 10/11/2012 | William F. Horn | Preparation for hearing on class certification –travel to, attendance at, and travel from hearing on motion for class certification | 8 | 350 | $2,800 |

These four entries, while they combine certain tasks, do not hamper the court's ability to evaluate the work done or reasonableness of time expended. Accordingly, the court will not reduce plaintiff's requested hours for these entries on the basis of their being block-billed.

    b.  Reasonable Hourly Rate

  The court must also determine reasonable hourly rates. The court notes at the outset that defendant does not object to the Seventy-Five Dollar ($75.00) per hour rate for Horn's law clerk, and the court accepts the same as appropriate. Therefore, the court turns to determine a reasonable rate for Horn. In making this determination the court takes note of the following Johnson factors: the customary fee for like work; the skill required to properly perform the legal services rendered; and the experience, reputation and ability of the attorney.

  "The reasonable hourly rate ultimately used in the lodestar calculation depends on the prevailing market rate in the relevant community for the type of work for which [plaintiff's] counsel seeks an award." E. Associated Coal Corp., 724 F.3d at 572 (quotations omitted). "[A]n applicant seeking an award of attorneys' fees must submit satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Id. at 571 (quotations omitted). The Fourth Circuit has held that affidavits of local lawyers "who are

8

familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" are competent evidence sufficient to verify the prevailing market rates. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 245 (4th Cir. 2009).

In this case, plaintiff has filed the affidavit of Adrian Lapas, who states that based on Horn's experience, an appropriate hourly rate of Three Hundred and Twenty-Five Dollars ($325.00) to Three Hundred and Fifty Dollars ($350.00) is appropriate. In plaintiff's own motion, however, he notes that in Weinstein & Riley, 2011 WL 1261578 which was a recent FDCPA case in this district, Lapas himself was awarded fees at a rate of Two Hundred and Seventy-Five Dollars ($275.00) per hour. Id. at *4. Numerous affidavits were filed in that case supporting such a rate. See id. At the time of the Weinstein & Riley decision, Lapas, like Horn at this time, had been licensed to practice law for eighteen (18) years. See Pl.'s Mot. for Attorney Fees ¶ 2 (Horn has been licensed since 1995); Pl.'s Mot. for Attorney Fees Ex. A, Lapas Aff. ¶ 2 (Lapas has been licensed since 1993). Thus, where Lapas himself, with similar experience to Horn, was awarded Two Hundred and Seventy-Five Dollars ($275.00) per hour on a similar case, the court finds the same to be an appropriate rate.

Where this rate appears to be common for similar FDCPA litigation, the court notes that this rate properly accounts for the skill required to properly perform the legal services rendered, and accounts also for the experience, reputation, and ability of the attorney. Thus the court arrives at a lodestar figure of Thirty-Three Thousand Two Hundred and Eight Dollars and 75/100 ($33,208.75) based upon 94.4 hours for Horn at Two Hundred and Seventy-Five Dollars and No/100 ($275.00) per hour and 96.65 hours for Thomasson at Seventy-Five and No/100 ($75.00) per hour.

### 2. Unrelated Unsuccessful Claims

The court next must subtract fees for hours spent working on unsuccessful claims unrelated to plaintiff's successful claim. Although this case involved a single FDCPA claim upon which plaintiff was successful, it was filed as a class action lawsuit. Counsel for plaintiff spent a significant amount of time on this failed class certification effort. The Supreme Court has instructed that claims are to be considered unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories." Hensley, 461 U.S. at 434. The Court recognized that "such unrelated claims [may be] unlikely to arise with great frequency," and that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. at 435. As was recognized by the Southern District of New York, "there is frequently an overlap of efforts relating to successful claims and to claims that ultimately fail. No surgical standards exist by which to neatly and minutely isolate and sever elements of legal services devoted to this division of claims." Betancourt v. Giuliani, 325 F. Supp. 2d 330, 333 (S.D.N.Y. 2004). In these situations, "the district court should focus on the significance of the overall relief obtained." Hensley, 461 U.S. at 435.

In this case, plaintiff's class action was unsuccessful where the court declined to certify a class. Significant time was spent on this unsuccessful effort. See generally Pl.'s Mot. for Attorney Fees and Costs Ex. A, Horn Aff. Ex. B (numerous entries related to class action). The class claims, however, were based on the same legal theories as the individual claim upon which he was ultimately successful, namely, that defendant left similar pre-recorded telephonic messages for a group of people, including plaintiff, in violation of the FDCPA. And while each alleged violation for each proposed class member would have been based upon a different instance of use of pre-

10

recorded telephonic messages, these instances, if not a common core of facts, are at least related facts. Thus, this court will not attempt to "isolate and sever elements of legal services" devoted to class claims, but will instead look to the overall relief obtained.

    3.    Degree of Success Enjoyed

The court next considers what percentage of the lodestar amount should be awarded in light of plaintiff's level of success. Boczar, 2013 WL 6501329 at *4. The court should reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 439-40. In considering the extent of the relief obtained, the court "compare[s] the amount of damages sought to the amount awarded." Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005).

In this case, plaintiff did not initiate the lawsuit seeking only statutory damages for himself, but also seeking monetary relief for a class of persons similarly situated. In plaintiff's unopposed motion for an order certifying the class, he argued that "there are potentially more that 25,000 members of the Settlement Class." Pl.'s Mem. Supp. Mot. to Certify Class 6. In the proposed class settlement rejected by this court after it denied class certification, the parties proposed that defendant pay a total sum of Twenty Thousand Dollars and No/100 ($20,000.00) in damages to plaintiff and to the class.[3] The court, however, declined to certify the class and the case proceeded as an individual suit. The merits of the underlying claim were resolved when plaintiff accepted an offer of judgment for One Thousand and One Dollars and No/100 ($1,001.00) – one dollar over the

---

[3] More specifically, under the terms of the rejected settlement, plaintiff would receive One Thousand Dollars and No/100 ($1,000.00) as statutory damages, One Thousand Five Hundred Dollars and No/100 ($1,500.00) in recognition for his services as class representative, and defendant would pay the remaining Seventeen Thousand Five Hundred Dollars and No/100 ($17,500.00) as a *cy pres* settlement to one or more charitable organizations without religious or political affiliations. Pl.'s Mem. Supp. Mot. to Certify Class 21.

11

maximum statutory damages. See 15 U.S.C. 1692k(a)(2)(A).

Thus, while the individual plaintiff enjoyed a good deal of success, the proposed class did not. No class was certified and thus no class relief was obtained. Where the majority of damages sought, as evidenced by the proposed class settlement, were not to be paid to plaintiff but as class damages, plaintiff's lawsuit enjoyed limited success. See Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 241 n.2 (4th Cir. 2010) (noting plaintiffs' limited success where they abandoned many claims in settlement, including efforts to certify classes); Betancourt, 325 F. Supp. 2d at 330-31, 335 (reducing plaintiff's attorney fee award where his civil rights class action failed to obtain much relief sought, including the certification of a class). The court will therefore reduce the remaining award by fifty percent (50%), for a total award of Sixteen Thousand Six Hundred and Four Dollars and 38/100 ($16,604.38) in attorney's fees.

## CONCLUSION

Based on the foregoing, plaintiff's motion for an award of attorney fees and costs (DE 50) is GRANTED IN PART AND DENIED IN PART. Defendant is ORDERED to pay to plaintiff the sum of Sixteen Thousand Six Hundred and Four Dollars and 38/100 ($16,604.38) in attorney's fees, and the sum of Eight Hundred Seventy-Seven Dollars and 55/100 ($877.55) in costs. Plaintiff is further DIRECTED to show, within fourteen days (14) good cause for failure to timely serve the John and Jane Doe defendants, else these defendants will be dismissed without prejudice.

SO ORDERED, this the 18th day of December, 2013.

LOUISE W. FLANAGAN
United States District Judge